Peace. As counsel are taking their seats, we've got, you already heard the instructions that if all the counsel would state their name as they begin their argument, but if the appellants would let us know how much time they hope to reserve for rebuttal, you saw that that's more hope than maybe reality sometimes. But, and then I understand that the appellees are splitting time because of the, it's going to be 15 minutes for the United States and five minutes for Hampton, and I believe we're going to have separate time on the clock so that Hampton's not panicking that the United States is using all their time. So you'll have your own time. So we'll start with Mr. Bricklin. Yes. Thank you, if it pleases the court, David Bricklin. This is North Cascade Conservation Council versus the Forest Service and others, the intervenors. Thank you for expediting this on your case calendar. That request was because this is a multi-year project. Some logging has already occurred, much more to occur in the future. They don't log during the winter. They do log starting around June 1. Just to be clear, there already, it's already been some of this clearing? Yes. Logging started a year or two ago, but it goes on across many years. Sorry, logging started, you said? A year or two ago. I'm not sure which year it was. Do you know how far along? Not far. It's spaced out over a decade or two, so this is a long-term project. There's 2,000 to 3,300 acres of logging to occur. A lot of road construction, 27 to 29 miles of roads to be constructed. The impacts of those roads are a major issue in this case, as you know. The roads not only destroy habitat, but they have a huge impact on fish because sediment flows off those roads into the creeks and kills fish. The Forest Service has a plan that they've adopted that says, we're not going to create more roads. Net impact of these projects has to be zero. The problem here is that they are allowing these so-called temporary roads to persist for two decades or even longer. Well, that's not what they say in their proposing brief. They say that this is sort of sub-project by sub-project, and that once one sub-project or this company gets to log this amount, that road is then closed, so that road is not open for 20 years. What's your response? That's not a requirement in the approval. There have been a couple of contracts. The first contracts that were let did have that in them, but it's not a requirement. There's nothing in the approval that says that will be the case going forward. As I understand, right, your argument isn't so much that for sure there will be roads open for two decades. Your argument is that there could, like there's nothing to prevent that from happening. Is that right? Exactly. Yeah, there's no requirement. And so, and this also bleeds into the issue about this whole accounting. Would it make a difference to you if the Forest Service before us today would represent that? As soon as a sub-project is finished, the road will be closed? Yes. That would be a huge concession. Well, the Forest Service may want to listen to that question and not answer. Yes. Okay. Yes. And then if that concession were made, then the other issue is this accounting issue, which is whether the roads are being correctly classified, because only some roads get closed out. The roads that are brand new or that are resurrection roads, if you will, roads that have been abandoned in the past or decommissioned in the past and are brought back, the Forest Service commits to decommissioning those at some point. The problem is that roads that aren't in those categories, that are existing roads, don't get decommissioned. And our concern with this inventory thing, and there's a whole mess of numbers in there, is that it's not clear that the Forest Service knows which category any road goes into. Why do we care about that if, now here's the if, if all of the roads that are built for this project are closed and closed at the end of each of the little subcategories within the project, if I were to conclude that those were temporary and therefore were no net increase, do I care about all the rest of that complicated accounting or not accounting for what the roads are? Right. So the reason it matters is whether the Forest Service is putting any given road in the right bucket, if you will. No, no, I'm not sure. We've got all those other roads that may or may not be in the right bucket. Those are existing roads, correct? Well that's the issue. Well those are or are not, whatever they are, that's our steady state. And we're not allowed to increase beyond that. So as to the roads for this project, if I were to conclude that they're all roads that are temporary and therefore no net increase, do I need to care about all these roads that you're not talking about? You don't need to care about them if they are correctly categorized. Let me give you an example. No, no, maybe you and I are not speaking the same language. We have an existing state and you're telling me, and I'm for the purpose of this question quite willing to go along with you, that the existing state and categorization of the roads is complex, uncertain, overlapping, confusing. Got it. But that's what exists. For this project, we're going to have roads that are opened up for purposes of this project and at the end of the project, they will be closed. If I were to conclude that all of the roads for this project are temporary and do not do I need to care about the current state of affairs? You wouldn't. I agree with that. Okay. That was my question. But that question had an if in it, and so I want to address the if statement. Do you disagree? I didn't read any of your briefing as disagreeing with the factual assertion. I know you're worried about the time, two decades in a row, but I didn't see you disagreeing that any road that they create for this, they will be decommissioning. They will be making that road go away. Your concern is that it could last for 20 years, but putting that aside, I didn't read you as disagreeing that they're somehow going to be opening a road and telling us that they're going to be closing every road that they open, but they're not really going to do that. I didn't see you as disagreeing with that. Let's pretend there's a road going up Taylor Ridge, and if that is viewed as a road that doesn't exist because it's been decommissioned, then yes, if they open it up and close it, we're fine. That's the if statement. On the other hand, if that road going up Taylor Ridge is not viewed as decommissioned, it's an existing road, it's the base case, then it's not going to be decommissioned afterwards. Okay? Now, if they have mischaracterized that road that goes up Taylor Ridge, if they say that road going up Taylor Ridge, we're going to count it as a base case, so we don't have to close it, but the reality is it's a decommissioned road, then it does need to be decommissioned after the fact. That's the problem when you look at it from any given road, which pot is it in, and if they put it in the wrong pot, if they put a road that should be decommissioned into the pot of not being decommissioned, then they're going to end up with more roads at the end. Do you have any road at all that you're pointing to where that's ... I see your concern there if that was to happen, but I don't remember seeing that there was any ... You said this stretch of road that they're characterizing as being some sort of road, but it's actually not a road at all. They're going to reopen it, and they're going to keep it open. Did you point to any actual real examples of that, or is it just that these numbers that ... It's the latter. It's that ... I don't believe the FAR service gave us a segment-by-segment inventory. They just gave us the totals in the different pots. The concern was the totals in the different pots aren't coming up the same. One time you look at it, it's 23 miles, another time it's 27, another time it's 29, so it's not clear to us that they have a clear understanding of my imaginary road up Taylor Ridge, which pot it's in. Then a different one, and another one, and that's why those accountings matter. In the forest plan, as amended, is there any requirement that before a project is adopted that they count all the categories of roads? Create a baseline? Is there any obligation on them to do that? There's not an explicit obligation. There is an implicit obligation if they use the method they've used here. The reason I say that is, if they didn't use this inventory basis, if they instead said, we're building six roads here, we're going to close them afterwards, done. Easy case. No need for determining what the baseline is. On the other hand, that's not what they're doing here. What they're doing here is they've created an inventory, and they're saying, we have this many in this pot, and this many in another pot, it's important then that you have those numbers right. I don't want to dwell on this. I've never been a good accountant. That's why we're lawyers, not accountants. You start out by talking about the possible 10-year length of the project, or 20 years. Or even more. The government argues, those are just temporary roads. Well, 10 years is a long time, or 20 years is a long time when you think about temporary. I don't think in those numbers. You said that in response to Judge Fletcher's question, that if the contracts were explicitly clear, that at the end of the contract period, they decommissioned or they restored every was adopted to fulfill that contract, that everything would be copacetic. Is that right? Yes. I did say that. Now, what is in the notice of decision, the final decision here, that lays that out? I would have to find that actual language. I think it's almost the absence of anything. There's nothing in the notice of decision that says roads that are created for an individual project shall be decommissioned immediately at the end of that project. Those words are not there. Is there any analysis of what temporary means? No. That was our subsidiary argument here, is in terms of APA failing to consider an important issue, there's been no consideration by the agency of what does it mean for a temporary road to last for 10 or 20 years or more? But no analysis of that. I have a question about going back to the let's assume that the worst case scenario you're talking about happened, which is either they screw up or bad faith or something and they take a road that's not technically a road and they reopen it for this project, but then at the end of it, they leave it open as a road because they think it was always a road. So it was misclassified. Why couldn't you then bring a lawsuit at the end of that saying, this is what you said you were going to do, you didn't do it, this road was a ... I mean, it seems as opposed to doing that versus shutting down a whole project based on the speculation that that might possibly happen, it seems like that seems a little ... It would be a very difficult monitoring situation for citizens to be tracking every contract and then to be out on the ground and seeing whether the road, identifying whether they've classified the road correctly and then coming back. I guess the thing is we have the federal government here telling us we're not going to do that, right? I mean, they're disputing that this will happen. And it's not at all clear to me that they're lying or something like that, so it seems odd to just kind of assume that they don't know what they're doing and that they're going to miss ... If it's true and possible what you're saying, then I just don't see why there would be a need to do that after the fact. And the remedy would be, presumably a court would say, go remediate that road and turn into it not being a road. It's a very difficult compliance oversight thing for citizens to be watching each one of these and then making a Freedom of Information Act request to find out how the government classified this road, going out on the ground, figuring it out, coming back at the end of the project to see if it was closed or not. And these are any number of projects. Let me make sure I understand your position. Two categories here. One is the steady state that exists right now, includes railroads, decommissioned roads, whatever. And you're worried that the government will open up decommissioned roads and leave them open or somehow change that status so that we have an increase in actual roads as to the current situation. Correct. The second category of problem is you're worried that the new roads that will be built for purpose of this project will last more than the time necessary for the individual subproject. Correct. And if both of those problems were resolved, that is to say, if we knew from the government that it would not change the categorization of any of the existing roads, and if we knew from the government that it would close the roads immediately after the subproject is done for this new project, that would satisfy you. Is that correct? Yes. And it's very certainly on the second one. On the first one, I think the quagmire is that it's not clear. When you said if the government would assure us that a currently decommissioned road, which sort of doesn't exist, is brought back to life, if they would commit that they will then close it, yeah, that's great. My concern remains that they are not my phantom road going up Taylor Ridge, that they're going to put it in the other category that doesn't need to be decommissioned. That's my concern. Maybe I should reformat my question as the first category. If the government were to commit that whatever exists today will exist at the end of all of this.  There would be no change. I guess you should be okay with that. Yeah. I mean, if every road that's decommissioned now is decommissioned at the end, yes. And would it satisfy you if the government were here today to commit to that? Yes. Yeah. Okay. I'm sure they're good to their word if they're going to make that representation to the court. I missed it. I don't remember if you said how much time you wanted to reserve. Oh, thank you, Your Honor. I intended to say five minutes. I see I'm coming right down on that. So I guess I would ask the court if it had any questions on the other issues that I haven't talked about, in particular, the woodpeckers or anything, I'd address that and otherwise I will wait for the reply. Thank you. We'll hear from the government. May it please the court, Brian Kipnis, Assistant United States Attorney for the Forest Service Appellees. You just heard what would satisfy the other side. I did, Your Honor. It's clear in the decision notice that what is intended here, that every new road added to the landscape by this project, which is what a temporary road is, temporary road is, as defined in the forest plan, a road that is added to carry out a project, every single mile of temporary road created for this project will be decommissioned. And I don't think they disagree that that's what you've said. It sounds like his concern is that you may misclassify something as being an existing road that is not. That seems to me to be what he seems to be concerned about. I don't know how that would occur, Your Honor. They have an inventory. They know what their roads are. And it's very clearly laid out in the decision notice. If there was a specific disagreement about us, not some abstract thing like we're hearing about today, but a specific, you know, this 2.3 miles was not a road that was decommissioned in 19-whatever, and you're treating it like it's a road, could that be challenged when you later, if it turned out that there was a concrete disagreement on that? And if so, how would somebody challenge that? It's a great hypothetical, Your Honor. I imagine that it would have to be under the APA. I can't imagine another way. So they would be challenging a decision. They'd be challenging and saying the Forest Service thinks this is actually some sort of existing road. I don't know the exact term. But it's actually was decommissioned and is no longer a road. And so I guess you'd have a court adjudicate that, right? You'd have a, or maybe you'd have to go through some sort of agency process to try it and then go up to a court. But it seems weird that you wouldn't be able to challenge that, but you're not sure. I'm not. There may be an agency process that I'm not aware of, Your Honor. But as far as in the district court, I'm having, I'm having difficulty coming up with a waiver of sovereign immunity that would work for that. But there may be an agency process. You know, I'm a little worried that for the moment we're mixing apples and oranges, apples being the existing state of affairs and oranges being the roads that would be constructed for purposes of this project. With respect to the existing state of affairs, is the government willing to commit that the existing state of affairs will not be changed? That is, they may be changed temporarily, but at the end of the project, we'll be back to where we are right now. I'll go further than that, Your Honor. This project specifically decommissions 18.6 miles, well, let me clarify, 17 miles of existing four system roads will be decommissioned by this project. Another 1.85 miles, 1.85, 1.5, somewhere, a little more than a mile, will be converted from roads to trails. So at the end of this project, there will be 18.6 less four system roads, and all of the temporary roads that are created to carry out this project will be decommissioned by the project. Okay, so then that's the second one, the roads that will be committed here. Is the government willing to commit that with respect to each subcategory, each subcontract that's let, that those roads will be decommissioned or turned back into whatever the prior state is at the end of each subproject, because their worry is, they say, well, this can go on for 20 years, and you might leave them open for 20 years. Apparently, the contracts that have been let require that the road be closed at the end of the particular contract. Are you willing to commit that that will be the practice here going forward for the remainder of the overall project? Yes, Your Honor. My understanding is the contracts expressly require the contractors to decommission as the project. I'm sorry. I understand that that's what the contracts say now. Are you willing to commit that that's what all the contracts will say in the future? Yes. Okay. Is that, is that, my only, my only, you know, before I went to the dark side and became an attorney, I did construction, and so this kind of construction. It seems to me like, why wouldn't the government, if you're going to have a project, and then you do a subcontract that's in exactly the same area, it's almost, it's super inefficient to like close, I mean, you know, at the end of the season, say, close, are you sure you can commit to that? I just want to make sure you're not over committing. I'm going to commit on the, with this understanding. So the way these contracts are set up, and it's the way Judge Fletcher described originally, they go into an area, they build out the roads to harvest a particular area. Then when they're done, the idea is that the road gets decommissioned. It's as, as needed. That's the way the contracts are set up. And in fact, by the way, we have intervenors counsel here who basically represent these, represents these contractors, and is probably a lot better able to respond to contract questions than I do. But my understanding is not just for environmental reasons, but for economic reasons, it makes sense for the contractors and the Forest Service to have these roads decommissioned as they go, and not remain on the landscape for decades. That's not what is envisioned here by this project at all. The commitment that you made to Judge Fletcher, in response to his question, I should say, where is that grounded in the notice of decision or in any of the documents that we're looking at? It's grounded in the sense, and I was rapidly trying to find the citation while counsel was arguing. I wasn't able to find it. But I can provide it later if you like. It's in the briefing as well. But the decisions notice specifically recognizes that the contracts to be created under the project will have this feature, which is that roads are to be decommissioned when their project-related purpose is finished. I didn't see that. I think they're in there. Do you have the citation? Yes. We'll have the citation for you. Okay. Okay. I'd appreciate it. If there aren't any more questions on roads, I want to talk a little bit about the woodpecker issue if the court is interested. Before you go on to woodpeckers for a second, where in the notice of decision, or is there any part of the notice of decision that deals with the temporary nature of these roads? There is a definition for, well, let me ask that question. There is a definition for what a temporary road is. That's in the plan? In the forest plan? That's in the forest plan. Temporary roads are discussed as such throughout the decision notice. I think it's just generally understood that temporary roads are basically intended, never become a system road, to be a road that is constructed specifically to carry out a forest project and then to be decommissioned at the end and never to become a forest system road. That's basically what the definition of a temporary road is. Basically, does this project contemplate, sort of, maybe this is a question I should ask for the other council that's coming up, but are there like key new roads that will be added as the project goes along, you know, that is sort of like a project system road that goes through the whole project where the trucks and trailers can come down, go up and come down and bring the product down? I don't know, Your Honor, but that's certainly feasible that there are some roads that maybe are a more mainly used road and that there are branches that maybe are decommissioned because they're no longer needed, but maybe the main road is. I mean, that wouldn't stretch my imagination. That might take out the whole project until the whole thing is done. I mean, I'd be speculating, Your Honor. Again, the notion is that it would be as long as the road is needed, the road would be used and be on the ground, and as soon as the road is not, no longer needed for a project-related purpose, that it would be decommissioned. That's the fundamental premise. Okay. Okay. I mean, can I? It does seem like the argument has shifted a little bit on these roads to, I don't hear them saying today that you can't have any increase ever, you know, like if there's 26 miles of roads, you can't build 4 miles of temporary roads and then go back to 23 total miles at the end. Like, they don't seem to be arguing that today, but I thought that was sort of their argument below was that you just can't have, by no net increase means you can't have any increase, any increase at all. You can't, you kind of have a cap and you can never go above that cap. You have to, you have to, the order, you have to get rid of a road before you could add miles of road. I don't hear, am I right in that was sort of the, because, first of all, am I right in that that was the argument that was, as it was presented below? If I am right about that, I'm trying to figure out like, what would our standard be? It doesn't seem like it's very well developed here, the idea of like, how long can you leave a road open and call it a temporary road? There's no, I mean, what are we, what are we supposed to, what standard are we supposed to apply to that? I don't. Well, that was originally, that was one of their original arguments, yes, Your Honor, you're correct, that the notion was that before we could add any road to the landscape, we would have to remove road first, so that at no time, there's a cap and you can't ever go above that cap even when the temporary road. The idea was that the no net increase standard meant no increase ever, right? So they kind of wrote the word net out of it. The beauty of that is that it's, it's a bright line, right? It seems like, and then as soon as you get away from that, I'm not saying that I'm not taking a position on that, but I'm saying like, at least that's a bright line, but now it seems like the concern as well, they might have this temporary roads for too long, but I haven't heard a number as to what's too long, like having, is, I don't think anybody's arguing now that one season is too long, but is five years too long? I don't know. Well, I guess the important thing to keep in mind is that too long notion is nowhere built in the standard, right? We're applying a forest plan standard that basically says no net increase. It doesn't say temporary roads can't be on the landscape for too long. That's nowhere in the forest. That's my point. It seems to me that's exactly what they're saying should be in, in this plan. But did they make that argument below to the, did they ever make that argument? They made the argument below that a road that is on the landscape too long cannot be consistent with a no net increase standard. In Bradford, the forest plan specifically exempted from the calculation of road mileage, temporary roads. I don't think the forest plan here does have that exemption, is that right? The forest plan exempts any system or non-system road, basically. I don't remember exactly what the, what the language is, but it doesn't differentiate  It specifically incorporates both types of roads. So you're asking us to sort of read into the forest plan what was explicit in the forest plan in Bradford. Bradford said temporary roads don't count. Here this forest plan doesn't do that. You're asking us to, to read that into the forest plan. I don't feel like I'm asking you to read that into the forest plan, Your Honor. Well, is it written in the forest plan that temporary, that temporary roads don't count? Not in those terms, no, Your Honor. Well, then you are asking me to read it into. The way I view it, Your Honor, is that. I'm not sure I'm unwilling to read it into, but I want to make sure I know what you're asking. Well, as you have put it, Your Honor, no, that is not in the forest plan. Yeah, that's what I thought. Yes. So we have to, first off, to get to where you want to get, we have to read into the forest plan that temporary roads don't count. And then we've got to figure out what a temporary road is. And do we know from Bradford how long those temporary roads lasted? And they were counted as temporary roads, and therefore they didn't count as a net increase. The Bradford, so are we talking about the right case, the case that involved the baseline calculation and whether or not the Forest Service roads could be subtracted from the baseline calculation? It's the Bradford opinion that I wrote. Okay. I don't know whether you remember that case or read that case. I think it's, I think, yeah. It's your key case. Okay. I think we're talking. So the issue there was simply what was the baseline cap calculated based on? And the Forest Service couldn't answer that question. So if the baseline cap did not include both Forest Service and non-system roads, then Wait, I don't think we're talking about the same case. Oh, you're talking about Savage. Yeah. Sorry. Savage is the one that has the baseline. Bradford is the case that says they're going to open the road for purpose of the project, and at the end of the project, they're going to put berms and barriers and decommission the roads. And were they, those temporary roads, did they count as net increase? And our answer was no. Your answer was no. Yeah. Correct. And the answer was no because they would be decommissioned before the end of the project. No, at the end of the project. At the end of the project. Sorry. Yeah. That's right. As certainly will be the case here under this forest plan. But the question that they're raising is, well, how long is that? Is that 20 years? And you're saying, well, it will be at the end of whatever sub-project it is. But I'm interested in Judge Piazza's question. What happens if we've got this sort of this main, I'll call it, arterial, quote, temporary road that leads off to the various sub-projects, that road may stay open for 20 years. That, it's feasible that that road could stay open for the length of the project. That's correct. I don't know that to be true, but I certainly can imagine it. But still. It seems to me that often that main road will actually be a road, right? Like it would already be an existing road, but you don't know. There may be a main road to use that would actually be a created temporary road for the purpose of this project. Correct. I think what Judge Piazza's hypothesizing is that one of those temporary roads might be more necessary than maybe a branch of that road. And I can't, I don't have any facts one way or another on that. Okay, I'll yield to my co-intervener now. May it please the Court, Sarah Gafori on behalf of the interveners Hampton Lumber and Skagit Log and Construction. They're the purchasers of the timber sale and stewardship contracts implementing a portion of the project. So with respect to temporary roads, all 32 temporary roads will be decommissioned following use. And I want to make one point before I get into the decision notice and where that's all laid out. Some of these temporary roads are non-system roads, about 12 miles.  about reducing both existing and non-system roads. But with respect to the contention that these roads are going to somehow persist on the landscape for over a decade, it's simply not true. If we look at the decision notice, it says temporary roads will be hydrologically treated and decommissioned after the harvest activities. And then it goes on to say in a footnote, as per standard timber sale contract clauses, temporary roads will be decommissioned following use. This is stated at the Forest Service's excerpts of record at 556. It's repeated on 557. And then it's also mirrored in the final EA at the Forest Service's excerpts of record at 220. Decommissioning following use is consistent with the Forest Service's own policy, which is referenced in the final EA. They reference their Forest Service manual, 7703.2, which discusses decommissioning following use. So that's at Forest Service excerpts of record 396. The suggestion that temporary roads will persist on the landscape is really a misunderstanding of how timber sale contracting works. If we look at the intervener's excerpts of record, that's at 42 and 43. This provides the temporary road requirements for one of the contracts that's being implemented here. And what it does is it incorporates by reference a standard timber sale contract provision. That's provision B6.63. It says, after the temporary road has served the purchaser's purpose, the purchaser shall give notice to the Forest Service. It shall remove bridges. It shall, you know, remove culverts. And it goes on to list other decommissioning activities. That full contract provision is found in the court record 16-4 at page 29, which is an exhibit to the price declaration. These contractors have already begun decommissioning some of these temporary roads because that's a practical matter. That's what's done. The contractor that is charged with reconstructing or constructing that temporary road is the same contractor that is charged with decommissioning that road. So for the Bonanza Thin Sale, 200 feet of temporary road has been done and 200 feet has already been decommissioned because it no longer serves the purpose to facilitate the harvest activities associated with that temporary road. With the Green Grouse Sale, three quarters of a mile has been done and a half a quarter of a mile has already been decommissioned here. And then the contention that temporary roads could persist for decades, that's in conflict with NIFMA. A timber sale contract can only have a 10-year duration. That's under 16 U.S.C. 742A, subsection B. And the same is true for stewardship contracts. No, I don't quite get that one. An individual contract cannot last for 10, but this project can last for more than 10 years, which may mean, for example, if there is an, I'll call it an arterial temporary road that's used for various parts of the subproject, that one may stay for a long time and more than 10 years. Is it possible or not? That's not correct, Your Honor, because that road is facilitating the hauling activities that are associated with that contractor. A contractor is not going to build a temporary road for another contractor to come in and to use for their harvest activities. It's all connected with the same sale. The Forest Service lawyer couldn't answer the question. You seem to think you can answer it. I'm imagining. So, the question is, is there something on the ground that tells us yes or no as to what I'm imagining? We go up a valley with a temporary road, and there are various projects on either side of the, as we go up the hill, but this temporary road serves the various subprojects. And that road may be temporary, but it may stay for quite a while because it's useful for all of the subcontracts. Now, do we know that that's not true? And if so, how do we know that? We know that's not true, Your Honor, because the temporary road that is being created is, that is under a contract, and that contractor is charged with creating that temporary road, whether it spurs to others, and it's also charged with decommissioning that temporary road. A different contractor will not do that work. So, you're telling me that if the geography is just as I have imagined it, that there is a road that kind of runs up the valley that's temporary, and then there are side roads that serve each of these subcontracts, that each time a subcontractor finishes, we're going to decommission that arterial and then reopen it for the next one? So I misunderstood your question. So if a temporary road needs to persist for more than one operating season, then what the contractor will do is it will close that road, weatherize it, and then reopen it for the next operating season. But you're not going to have a situation where it will persist for decades because, again, by the end of the contract, they will complete those units. You still don't understand my question, then. I'm imagining a road that is necessary for a number of different contracts because it's a road that runs up the valley, and you've got contracts, three or four of them on that side of the valley, three or four of them on that side of the valley, but this is a temporary road that allows access to all of the contracts, and I'm worried about that arterial that goes up the valley. And my understanding, Your Honor, is that there wouldn't be a situation where the contractor is building a temporary road that will be artillery for other sale units. It will all be part — that's not a situation that we have here, Your Honor. And that's your understanding on — what is your understanding based? Based on the practice of contractors and how these sales work. But you don't have a map in your head as to where these are? Well, there are maps in the intervener's excerpts of record for the Green Grouse Sale. That's in the intervener's excerpts of records. I don't have the pin sites, but they're right after the Lincoln-Torgetson Declaration. But your understanding is that the temporary roads built by Contractor A will be entirely different from the temporary roads built by Contractor C, by D, E, and F? They're never going to be a common road? That's my understanding. They're going to be associated with that sale. Okay, but that strikes me as at least maybe not true. I mean, I can't — I mean, I've been looking at this stuff. I'm not sure that what you say is demonstrably true. But the important point is, Your Honor, is that at the end of the project, all temporary roads will be decommissioned. And when we look at the Northwest Forest Plan — I understand that. But this goes to the point that they're making is, well, temporary — a year or two, that's temporary. Twenty years isn't. Now, that's — we may decide that 20 years is temporary, but that's their argument. I understand, Your Honor. I see I'm over time. If we have no further questions, we'll go ahead and have rebuttal time. Counsel? Thank you, Your Honors. Before you start, I do want to clarify one thing. Is your — I don't believe your position now is that you can't go above — like, there's some number, say, 100 miles, right, of road. You're not arguing that you couldn't have 110 miles counting temporary roads during a project as long as it falls below. You have different disputes about that — how long is temporary, et cetera. But you're not arguing that that 100 miles, you can't ever go above that. Is that — I think that's fair, because you're right. We did start with the position it can't ever go over, even for a day, if you will. That was my next question, was — I don't believe that's your argument today, but was that your question? Was that your argument? It is. And I'm not sure that we've totally given up on that, but we've acknowledged in the reply brief that they've cited a case where a truly temporary — you know, I think it was two years, and another one said immediately, it didn't define immediately. So there'd be some short — very short-term durations. And so we acknowledge that there are cases that have affirmed that. And we've — but we've distinguished our situation, where you have up to 20 years. And to go to the example, which I think is exactly our concern, is — and the council's not able to point anywhere in the record — where your so-called arterial temporary road is going to be there for a very long time. And as you indicated from your past experience, it doesn't make a lot of sense for this arterial, if you will, to be shut down after Project 1 is done, and then two years later, they're going to reopen it for Project 2, and then — Yeah. Maybe my instincts are a little different than Judge Fletcher's, only in the sense that, like, it seems to me like it's a good chance that those arterial roads will be actually the existing roads, A, right, and then the temporary roads will be the offshoots. But the second thing is, it sounded to me like what we were hearing was that it sounds like these contracts are typically issued such that all the work in a certain area that would be accessed over maybe multiple seasons would be one contract to a certain person. And in that case, it would make sense. You open up the road, and you might take several seasons, but then you shut it all down, and then you have a separate contract in a different area. That's what it sounded to me like they were saying. Do you know if that's true or not? I think no one knows, and I think, you know, unfortunately, I think we're all speculating in terms of what the geography is and how these roads would actually play out. So that's my concern, is if we're speculating, I mean, do we overturn, you know, a government plan based on my speculation about how this might happen, or what do we do if we don't know? Well, I think you have, under the APA, you have a situation where the government has not fully analyzed an important issue. The government has to, when it says, we're going to allow these roads temporarily, but we don't really know what temporary means, whether they're going to be closed in a year or two or a decade or two, the government has, it's the government's obligation to understand what it is authorizing. We don't get a chance to come back five years from now and argue again as, you know, well, the way this is playing out, we've got these roads in here for a decade. This is our chance, and the government had the obligation at this stage in the proceedings when it issued its decision to have figured this out. Do you not have a chance to, I mean, going back to my original question about if it turns out that they misclassify, in your view, this thing that in saying it's a road, so they're not going to, they're just not going to take it out, say, and let's say you're, let's stipulate that you're absolutely right, that they should be taking this road out after. Is there a way for you to challenge that? Well, I, you know, in addition to the practicality issues that I mentioned earlier, you know, counsel also, counsel for the government said there also might be sovereign immunity issues that would preclude us from challenging it, so I don't know how we would go about doing that. I mean, I don't want to foreclose that possibility because I haven't researched it, but... You just don't know. Okay. Yeah. So let me ask you, what is the relief you're asking for? In your briefs in the district court, you asked for the notice of decision to be vacated and remanded. Would that have the effect of stopping any further logging until... And I believe in this case it would, and we can, I don't think any of the parties have briefed that. I've briefed that in other cases. Well, I guess what I was getting at is you said that if they would make it clear that the end of every project, they were decommissioning every road, that you could live with that. When you answered Judge Fletcher's question earlier, would it not be, if we would agree with you, wouldn't it be appropriate just to leave the, not vacate the decision, but just remand it back to get further consideration? Well, I think the issue is... That way they could, as counsel said, at the end of the project, there's going to be fewer roads. Right. So... I'm trying to understand what it is you really want. We would like the decision vacated, and if they want to then incorporate in a new decision these limitations that we've been discussing, then that would be the relief we were seeking, basically. To limit the duration of these so-called temporary roads so that they're really short-term. The longest case we've seen in the cases cited by the parties is two years, I think, not 10 or 20. You know, just on a global sense, when I read the overview and what their goal was and the reasonable project. I mean, they want to thin, and they want to, you know, create the forest so that the succession, you know, the older trees can grow and provide habitat. Yes. You know, we've... It all seemed reasonable. We've, in large part, moved past the days of the, to a certain extent, the massive clear cuts where everything goes. And there's a more nuanced method in this and other cases. But the devil's in the details. And if you're going to do it right, you, as an example here, the Forest Service says, even when you're using this more nuanced approach, we still don't want more roads. And so, you know, although, yes, the project at the 30,000-foot level sounds good, you have to look at the details. You don't just... You don't disagree with that concept that the thinning would be... As I understand it, you're... As I understand it, you prefer the alternative of not having any commercial thinning, only having non-commercial thinning. True. Correct. Can I ask one question about that? So commercial thinning, does that involve both commercially thinning as well as taking out stuff that wouldn't necessarily be commercially viable? No. Not... My understanding is no. Is that the commercial thinning is the for-profit thinning. So does non-commercially thinning include cutting down things that would be commercially viable if you loaded them on a... If you loaded them on a... Yes. In non-commercial thinning, you can cut a commercially viable tree and you leave it on the ground. Okay. And it creates... It's an important habitat feature, frankly, both in terms of opening up the cover, the canopy, and also in terms of habitat on the ground. But with respect to the commercial thinning, I understand that certain trees will be commercially valuable if they're big enough. Yes. Does the commercial thinning project require the contractor to cut the smaller trees that are not commercially viable, but would nonetheless take water or whatever from big trees? That was my question. Yeah, but I don't think I got an answer to that question. And I do not know the answer to that question. You don't know the answer to that question? Yes. Yeah. That was your question, though. Yeah, the question... I didn't hear the answer. He asked it better than I did, so thank you. All right. Well, if... No further questions for my colleagues? Thank you very much. This clerk sits in recess until tomorrow. Thank you.
judges: FLETCHER, PAEZ, VANDYKE